******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ALAIN LECONTE *v.* COMMISSIONER OF CORRECTION
## (AC 43584)

Prescott, Cradle and DiPentima, Js.

*Syllabus*

The petitioner, who had been convicted of several crimes in connection with three armed robberies in Norwalk, Greenwich and Stamford, sought a writ of habeas corpus, claiming, inter alia, that his trial counsel rendered ineffective assistance by failing to investigate adequately and to present evidence that he suffered from significant mental disease that rendered involuntary an inculpatory statement regarding his involvement in the Norwalk and Greenwich robberies that he had made to a cellmate while he was incarcerated on charges related to the Stamford robbery. The petitioner asserted that evidence of his mental health issues would have led the trial court to grant his motion to suppress that statement and was necessary, after the statement was admitted into evidence, to effectively cross-examine and to discredit the state's witnesses regarding that statement. The habeas court determined both that there was no evidence that the petitioner's statement to the cellmate was not made knowingly, intelligently and voluntarily, and that the petitioner failed to present evidence that showed how his mental health affected the voluntariness of that statement. The court further determined that, during the pendency of the petitioner's criminal case, his mental health records had been reviewed by a physician who was board certified in forensic psychiatry and that another mental health professional had prepared a report that concluded that the petitioner was malingering. The court thus concluded that the petitioner failed to prove that his trial counsel performed deficiently or that he was prejudiced by his counsel's alleged failure to investigate or to present evidence about the petitioner's mental illnesses. The court therefore denied the habeas petition, and the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly concluded that the petitioner failed to demonstrate that he suffered constitutionally ineffective assistance from his trial counsel: there was no evidence regarding the scope of trial counsel's investigation into the petitioner's mental health or the strategic reasons, if any, why counsel believed such an investigation was not warranted, the petitioner did not call his trial counsel or any other witness to testify regarding the extent of the investigation into the petitioner's mental health problems, and the petitioner was not asked during his testimony whether he had had discussions with or had provided information to his trial counsel regarding the state of his mental health at the time he made his inculpatory statement to the cellmate; moreover, there was a dearth of evidence regarding whether the petitioner's mental health issues would have impacted the voluntariness of his statement to the cellmate to the extent that the trial court would have suppressed the statement, and this court declined to review the petitioner's inadequately briefed claim that evidence regarding his mental health was necessary to effectively cross-examine and to discredit the state's witnesses regarding the inculpatory statement, as his appellate brief was devoid of citations to the record or to the trial transcript bearing on this issue, it did not state which witnesses he would have cross-examined, the substance of their testimony or how the medical evidence his counsel allegedly failed to find would have impeached that testimony, and there was no merit to the petitioner's assertion that the habeas court overlooked the evidence or should have drawn certain inferences in his favor.

2. This court declined to review the petitioner's inadequately briefed claim that the habeas court improperly concluded that he did not demonstrate that his appellate counsel rendered ineffective assistance by failing to raise on direct appeal a claim that the trial court improperly granted the state's motion for joinder of the three robbery cases; the petitioner's brief contained no discussion, analysis or application of any of the evidentiary principles that would dictate whether certain evidence in

one case would be cross admissible in the other cases, it did not analyze the cross admissibility of the inculpatory statements he made to various informants or the ballistics evidence that tended to show that the gun he used in and that was recovered from the Stamford robbery was also used in the Greenwich robbery, and he failed to recognize in his brief that the application of certain factors was unnecessary if the evidence was cross admissible or to discuss substantively why the evidence was not cross admissible.

Argued February 3—officially released September 7, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Deborah G. Stevenson*, assigned counsel, for the appellant (petitioner).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Paul J. Ferencek*, state's attorney, and *Kelly A. Masi*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Alain Leconte, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court improperly concluded that he failed to demonstrate that (1) his trial counsel rendered ineffective assistance of counsel with respect to his efforts to suppress or to otherwise respond to evidence of an inculpatory statement he made to his cellmate, and (2) his appellate counsel rendered ineffective assistance by failing to raise on direct appeal a claim that the trial court improperly granted the state's motion to join for trial the charges against him that arose out of three separate robberies. We are not persuaded by the petitioner's first claim and decline to review the second claim because of inadequate briefing. Accordingly, we affirm the judgment of the habeas court.

The following facts, as set forth by our Supreme Court in the petitioner's direct criminal appeal, are relevant to our disposition of this appeal. "Between October and December, 2009, the [petitioner] participated in three armed robberies, each of which resulted in criminal charges against him.

"The first robbery took place on October 10, 2009. The [petitioner], together with an accomplice, entered a Shell gas station and convenience store in Norwalk and demanded that the store clerk hand over the money in the cash register, which contained approximately $1300. He then shot the clerk in the head before fleeing with his accomplice. The clerk later died from the gunshot wound.

"The second robbery took place on November 21, 2009. The [petitioner] and three accomplices drove to a Mobil gas station in Greenwich. While two of the accomplices waited in the car and the third, Teran Nelson, stood outside as a lookout, the [petitioner] entered the convenience store and ordered the clerk at gunpoint to give him the money in the cash registers. After the clerk handed over approximately $638 and several boxes of cigarettes, the [petitioner] shot him in the head and drove off with Nelson. The clerk ultimately recovered from the gunshot wound.

"The third robbery occurred on December 12, 2009. The [petitioner] called and asked a friend, who also was a police informant, to give him a ride in her car. During the ride, the [petitioner] told her to stop at a certain location, where he picked up a gun, smoked marijuana, and met an accomplice, David Hackney, with whom he decided to commit a robbery. The informant then drove the [petitioner] and Hackney to a Walgreens store in Greenwich. While the two men waited in the car, the informant purchased a pair of stockings that the [petitioner] said he wanted for his mother and contacted

the police by cell phone to warn of a possible robbery in Stamford. When the informant returned to the car, she drove the [petitioner] and Hackney back to Stamford and dropped them off on Vista Street. The men then walked a short distance to Adams Grocery Store. After the [petitioner] and Hackney pulled the stockings over their heads, they entered the store and the [petitioner] ordered everyone at gunpoint to get down on the floor. When the [petitioner] encountered difficulty trying to open the cash register, the store clerk offered to help. The [petitioner] then grabbed approximately $203 in cash and fled from the store with Hackney. A short time later, the police caught the [petitioner] as he was running down the street.

"The [petitioner] was detained and arrested, and various individuals who had been in Adams Grocery Store during the robbery identified the [petitioner] and Hackney as the men who had just robbed the store. Police officers who had observed the men in immediate flight also identified the [petitioner], who was wearing the same clothing he had worn during the robbery. The [petitioner] then was brought to the police station, where he provided a written statement in which he confessed to his involvement in the Stamford robbery and provided details regarding the incident. The [petitioner] subsequently was charged with two counts of robbery in the first degree in connection with this robbery.

"During the [petitioner's] incarceration for the Stamford robbery, he told Anthony Simmons, a cellmate who had agreed to be a cooperating witness for the state, that he had been involved in the Norwalk and Greenwich robberies. On the basis of this information and the evidence obtained from several other persons who also were cooperating witnesses, the [petitioner] was charged with murder, felony murder and robbery in the first degree for his participation in the Norwalk robbery and with attempt to commit murder and robbery in the first degree for his participation in the Greenwich robbery.

"The three cases were joined for trial on August 21, 2012, and a jury found the [petitioner] guilty as charged, except with respect to the two first degree robbery charges in the case involving the Stamford robbery. With respect to those charges, the jury found the [petitioner] guilty of two counts of the lesser included offense of robbery in the second degree because evidence had been admitted that the gun he had used in the Stamford robbery was inoperable. On February 13, 2013, the court rendered judgments of conviction and imposed a total effective sentence of ninety years [of] incarceration." *State* v. *Leconte*, 320 Conn. 500, 502–505, 131 A.3d 1132 (2016).

On March 26, 2015, the petitioner initiated this habeas action. After the petitioner was appointed counsel, he

filed an amended petition for a writ of habeas corpus in which he asserted various ways in which he allegedly was deprived of the effective assistance of his trial counsel, Attorney Mark Phillips, and his appellate counsel, Attorney Daniel J. Foster. Specifically, the petitioner alleged, among other things, that Phillips rendered ineffective assistance by failing to investigate adequately and to present evidence of the petitioner's mental health issues in order to persuade the trial court to suppress an inculpatory statement the petitioner made to his cellmate and, once admitted into evidence, by failing to cross-examine witnesses about the reliability of that statement. With respect to appellate counsel, the petitioner alleged that Foster rendered ineffective assistance by failing to raise on direct appeal a claim, which was preserved below, that the trial court improperly granted the state's motion for joinder of the charges relating to all three robberies.

Following a trial on the merits, the habeas court concluded that the petitioner failed to prove his claims of ineffective assistance of counsel. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The petitioner first claims that the habeas court improperly concluded that he failed to prove that his trial counsel rendered ineffective assistance in his efforts to suppress or to otherwise respond to evidence of an inculpatory statement the petitioner made to his cellmate, which had been recorded. The petitioner argues that trial counsel failed to investigate adequately, and to present evidence of, the fact that he suffered from significant mental disease that rendered involuntary any inculpatory statement he made to his cellmate. In the petitioner's view, if such evidence had been secured and presented by counsel, the trial court would have suppressed the statement. In the alternative, he contends that such evidence was necessary to "effectively cross-examine the state's witnesses in order to discredit their testimony about the recorded statements." We are not persuaded by the petitioner's argument regarding suppression of the recorded statement and conclude that his alternative contention is inadequately briefed.

The following additional facts and procedural history are relevant to this claim. After the petitioner had been arrested on charges relating to the Stamford robbery, but prior to being charged with respect to the robberies in Norwalk and Greenwich, he made inculpatory statements to Simmons, who was wearing a recording device at the request of the state, with whom he was cooperating. The inculpatory statement related to the petitioner's involvement in the Norwalk and Greenwich robberies but did not include any discussion of the Stamford robbery.

The petitioner subsequently moved to suppress the audio recording of his statement on the ground that the state had violated his sixth amendment right to counsel because, at the time he admitted his involvement in the Norwalk and Greenwich crimes to Simmons, he already was under arrest and represented by counsel with respect to the charges arising from the Stamford robbery. Following a suppression hearing at which the petitioner and Simmons, among others, testified, the trial court denied the petitioner's motion to suppress.

After the petitioner was convicted, he filed a direct appeal in which he claimed that the trial court improperly denied his motion to suppress. In that appeal, the petitioner acknowledged "that, because the statements concerned offenses for which he was not yet represented by counsel, they were admissible with respect to the charges stemming from the Norwalk and Greenwich robberies at the time of his trial on those charges. He claim[ed], however, that, because the trial court granted the state's motion for joinder and tried the charges in all three cases in a single proceeding, the incriminating statements could have invited the jury to infer that, if the [petitioner] had committed the Norwalk and Greenwich robberies, he was likely to have committed the Stamford robbery." *State* v. *Leconte*, supra, 320 Conn. 505. By its terms, this appellate claim related solely to a challenge to the conviction of charges arising out of the Stamford robbery and did not attack his conviction of the charges relating to the Norwalk and Greenwich robberies.

Our Supreme Court rejected the petitioner's claim on the ground that, even if it assumed, without deciding, that the trial court improperly denied his motion to suppress, any error was harmless beyond a reasonable doubt because "the evidence of the [petitioner's] guilt [with respect to the Stamford robbery], even without the testimony of Simmons regarding the Norwalk and Greenwich robberies, is so overwhelming and compelling . . . ." Id., 506. As the court stated: "[T]he [petitioner] voluntarily gave a detailed statement to the police one day after the Stamford robbery confessing to his role in that incident and . . . another fellow inmate, Cheikh Seye, testified that the [petitioner] had told him in July, 2010, that he had committed the Stamford robbery. Four eyewitnesses also gave testimony regarding the Stamford robbery that corroborated the [petitioner's] description of events inside the store, and two of the eyewitnesses who had chased him down the street following the robbery not only corroborated the [petitioner's] account of many of his actions after running out of the store but saw him apprehended by the police when he was still wearing the stocking to conceal his face. Accordingly, we conclude that the [petitioner's] convictions resulting from his participation in the Stamford robbery should not be reversed because any

presumed error by the trial court in admitting the incriminating statements was harmless beyond a reasonable doubt." Id., 507.

In this habeas proceeding, the petitioner asserted that his trial counsel failed to investigate adequately his history of mental disease. The petitioner did not call his trial counsel as a witness at trial and, thus, did not present evidence regarding the scope of Phillips' investigation or the strategic choices counsel made in preparing a defense.

On the basis of the evidence presented, the habeas court made the following findings of fact with respect to this claim: "On or about April 28, 2011, the trial court, *Comerford, J.*, ordered that the petitioner be examined for his competency to stand trial pursuant to General Statutes § 54-56d. The petitioner subsequently was found competent to stand trial. Attorney Phillips filed several defense motions heard by the court, *White, J.*, on May 17, 2012. The defense motions focused on three claims: first, that Simmons was an agent of the police and that the petitioner was in custody and interrogated in violation of the fifth amendment; second, that the petitioner's sixth amendment right to counsel was violated because he had only been arrested for the Stamford robbery, and his counsel in that matter was not present; and third, that the petitioner's right to due process was violated because his statements to Simmons, allegedly an undercover police agent, were coerced. The petitioner testified in support of these claims at the May 17, 2012 hearing, but the motions were denied.

* * *

"[Dr. Tobias Wasser, an assistant professor at the Yale University School of Medicine and medical director at the Whiting Forensic Hospital, who has worked with the Department of Correction [department] since 2014, and is board certified in forensic psychiatry] reviewed the petitioner's mental health records, competency evaluation, and a report that was prepared by Dr. Eric Frazer, a mental health professional affiliated with Yale University, presumably at the request of Attorney Phillips during the pendency of the underlying criminal case. Dr. Wasser testified that, in 2010–2011, the petitioner was diagnosed with schizophrenia and schizoaffective disorder, both of which are serious mental illnesses. Symptoms of schizophrenia include hallucinations, delusions, paranoia, experiencing stimuli that are not present, and disorganization of thinking and/or behavior. There are two types of schizoaffective disorder: bipolar and depressive. Schizophrenia and schizoaffective disorder are treated with a combination of therapy and antipsychotic medications. If no medications are administered, according to Dr. Wasser, then someone suffering from schizophrenia and/or schizoaffective disorder will relapse. In the petitioner's case,

he has not relapsed after the antipsychotic medications were stopped. The petitioner in 2010–2011 was also diagnosed with borderline functioning IQ, antisocial personality disorder, and post-traumatic stress disorder. The report from Dr. Frazer concluded that the petitioner's mood dysregulation, auditory hallucinations and additional psychiatric symptoms were secondary to his drug dependency. Dr. Frazer further concluded that a review of the petitioner's medical records did not support a finding that the petitioner suffered from a thought disorder. Instead, the report concluded that the symptoms exhibited by the petitioner were consistent with the conclusion that the petitioner was malingering.

"While the review of these documents provided an informative background history, Dr. Wasser did not conduct his own evaluation of the petitioner because a present day evaluation would not be fruitful to examining the petitioner's mental health in 2010. Dr. Wasser was not presented as an expert on the petitioner's mental health and provided no opinion as to how the petitioner's mental state affected the voluntariness of the statements to Simmons.

\* \* \*

"[T]he petitioner's medical records entered into evidence show that . . . while in [the department's] custody, [he] was diagnosed with various mental health conditions. Records dated 2014 reflect that he was diagnosed with impulse control disorder and antisocial personality disorder. Another record dated 2013 shows that [the] petitioner was diagnosed with adjustment disorder. A mental health assessment dated 2011 indicates that the petitioner's mental health history included schizoaffective disorder, impulse control, and anxiety. Yet another record from December of 2011 indicates that the petitioner was diagnosed with substance induced psychosis and borderline intellectual functioning.

"In July, 2011, a psychological evaluation concluded that the petitioner, despite his intellectual limitations, intentionally feigned impairment. This evaluation noted that the petitioner's scores indicated he is intentionally attempting to present himself in a negative light. His response pattern on the validity measure indicates he feigns illness on all clinical domains assessed, including affective disorders, memory deficits, neuropsychological impairment, low intelligence and psychosis, suggesting his overall cognitive abilities likely fall much higher than the demonstrated [e]xtremely [l]ow range of cognitive abilities.

"The petitioner's mental health and treatment records span several hundreds of pages and encompass years prior to 2010 and thereafter. The foregoing references to specific diagnoses, although not exhaustive, illustrate

the wide range of mental health issues affecting the petitioner at various times, including the two days Simmons wore a recording device to capture the petitioner's incriminating statements." (Footnote omitted; internal quotation marks omitted.)

In discussing the petitioner's arguments that trial counsel rendered deficient performance related to the petitioner's mental health, the court stated: "Although the petitioner was affected by various mental health issues while in [the department's] custody, these mental health issues varied over time. The evidence presented to this court fails to prove how he was impacted, if at all, by such illnesses when Simmons recorded the petitioner. As the testimony from Dr. Wasser and the [department's] medical records show, the petitioner was found to be malingering, which calls into question the varying diagnoses listed in the petitioner's [department] medical records. The fact that the petitioner has not experienced a relapse when he stopped receiving medications to treat schizoaffective disorder underscores the tenuous reliability of past diagnoses. This tenuousness is further amplified by attempts to assess the petitioner's mental health about a decade after the relevant dates at issue."

On the basis of its factual findings, the habeas court reached the following conclusions: "The [testimony presented] fail[s] to show that Attorney Phillips failed to investigate the petitioner's mental illnesses and consult with a doctor. First, the evidence establishes that the petitioner's mental health was explored, as demonstrated by the report of Dr. Frazer. Second, [because] Attorney Phillips did not testify at the habeas trial, there is no evidence affirmatively proving that Attorney Phillips made tactical or strategic decisions that were unreasonable, deficient, or below the standard of reasonably competent criminal defense counsel. More importantly, the petitioner has not proven what it is exactly that he alleges Attorney Phillips should have done and how that would have made a difference in the outcome of the suppression hearing or the jury's verdict.

"There is no evidence that the petitioner's statements to Simmons were not knowing, intelligent, and voluntary. . . . It is well established that counsel is presumed to have rendered effective [assistance] unless deficient performance is affirmatively proven. . . . Furthermore, the petitioner has not presented any evidence that shows how his mental health affected, if at all, the voluntariness of his statements to Simmons. Even if the court assumes for the sake of discussion that the petitioner had mental illnesses, that alone would not prove that such mental illnesses resulted in the petitioner's statements to Simmons being coerced, involuntary, unreliable or factually untrue. The petitioner has therefore failed to rebut this strong presumption of effective assistance with evidence proving that

Attorney Phillips performed deficiently.

"In addition, the petitioner cannot prove that he was prejudiced by any failure of Attorney Phillips to properly put before the trial judge and the jury his mental illnesses. As recounted previously, a reading of the transcript makes clear that the evidence against the petitioner was overwhelming even when removing his statements to Simmons from the equation. There were several other individuals to whom the petitioner admitted, or alluded to, his involvement in the offenses charged, and corroboration of the state's version of events was provided by independent, impartial witnesses as well as through other evidence submitted to the jury. There is simply no basis from which this court can conclude that the petitioner was prejudiced."

We begin our analysis of the petitioner's first claim with a review of the law governing claims of ineffective assistance of counsel and the corresponding appellate standard of review. "A criminal defendant's right to the effective assistance of counsel extends through the first appeal of right and is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Citations omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). "To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Antwon W.* v. *Commissioner of Correction*, 172 Conn. App. 843, 849–50, 163 A.3d 1223, cert. denied, 326 Conn. 909, 164 A.3d 680 (2017). On appeal, "[a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they [are] clearly erroneous, whether those facts constituted a violation of the petitioner's rights [to the effective assistance of counsel] under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard [of

review].'' (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 469–70, 68 A.3d 624, cert. denied sub nom. *Dzurenda* v. *Gonzalez*, 571 U.S. 1045, 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013).

The petitioner, in his brief on appeal, does not challenge any of the habeas court's underlying factual findings as clearly erroneous. Nor does he claim that the habeas court applied an incorrect legal standard. Instead, the petitioner simply asserts that the habeas court "overlooked the evidence" or should have drawn certain inferences in his favor from the evidence presented. This assertion is devoid of merit.

It is well established that it is the petitioner's burden to prove that his trial counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland* v. *Washington*, supra, 466 U.S. 687. "We . . . are mindful that [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"Similarly, the United States Supreme Court has emphasized that a reviewing court is required not simply to give [counsel] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he or she] did." (Citations omitted; internal quotation marks omitted.) *Ricardo R.* v. *Commissioner of Correction*, 185 Conn. App. 787, 796–97, 198 A.3d 630 (2018), cert. denied, 330 Conn. 959, 199 A.3d 560 (2019).

The petitioner, however, did not call his trial counsel or any other witness to testify at the habeas trial regarding the extent of the investigation conducted by counsel into the petitioner's mental health problems. Moreover, the petitioner, who testified at the habeas trial, was not asked about whether he had had any discussions with or had provided any information to his criminal trial counsel regarding the state of his mental health at the time he made his inculpatory statement to Simmons. As a result, there simply is no evidence in the record regarding the scope of his trial counsel's investigation into the petitioner's mental health or the strategic reasons, if any, why his trial counsel believed that such an investigation was not warranted under the circumstances. At best, the record supports an inference that

the petitioner's trial counsel was aware of Frazer's report in which the petitioner was described as malingering, and that he realized that it could have been counterproductive to the petitioner's case to expose the jury to such information.

Similarly, there was a dearth of evidence presented at the petitioner's habeas trial regarding whether the petitioner's mental health issues would have impacted the voluntariness of the inculpatory statement he made to Simmons to the extent that the trial court would have suppressed it. We agree with the habeas court's recognition that, simply because the petitioner suffered from some mental health issues does not establish, by itself, that those issues undermine the voluntariness or reliability of the inculpatory statement he made to Simmons. See, e.g., *State* v. *DeAngelis*, 200 Conn. 224, 235, 511 A.2d 310 (1986) (admissions to police are not rendered involuntary merely because defendant suffered from psychiatric disorder).

We emphasize that the petitioner does not claim that any of the factual findings made by the habeas court are clearly erroneous. Instead, the petitioner's assertion is simply that the habeas court should have credited other evidence or drawn certain inferences from certain evidence that he presented. This assertion, of course, conflicts with our long-standing recognition that it is not the province of an appellate court to retry the facts, or to pass on the credibility of witnesses or the weight to be accorded their testimony. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 220–21, 435 A.2d 24 (1980). Accordingly, we decline the petitioner's invitation to do so.

Finally, we decline to review because of inadequate briefing the petitioner's related assertion that, even if the additional evidence regarding the petitioner's mental health would not have resulted in suppression of the inculpatory statement, it was necessary to "effectively cross-examine the state's witnesses in order to discredit their testimony about the recorded statements." "Ordinarily, [c]laims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . . As a general matter, the dispositive question in determining whether a claim is adequately briefed is whether the claim is reasonably discernible [from] the record . . . . We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Villafane* v. *Commissioner of Correction*, 190 Conn. App. 566, 578–79, 211 A.3d 72, cert. denied, 333

Conn. 902, 215 A.3d 160 (2019).

The petitioner's brief on appeal does not state which witnesses he would have cross-examined regarding the voluntariness of his inculpatory statement, the substance of those witnesses' testimony, or how the additional evidence that Phillips allegedly failed to find would have served to impeach these witnesses' testimony. Additionally, the petitioner's brief is devoid of citations to the record or the transcript of the criminal trial bearing on this issue. We therefore decline to review his claim and conclude that the habeas court properly concluded that the petitioner failed to demonstrate that he suffered constitutionally ineffective assistance from his trial counsel.

II

The petitioner also claims that the habeas court improperly concluded that he failed to demonstrate that his appellate counsel rendered ineffective assistance by failing to raise on direct appeal a claim that the trial court improperly granted the state's motion to join the charges arising out of three separate robberies. We decline to review this claim because of inadequate briefing.

The following additional facts and procedural history are relevant to this claim. Prior to the commencement of the petitioner's criminal trial, the state moved to join the charges arising out of the Norwalk, Greenwich, and Stamford robberies. The state asserted that the motion should be granted because, pursuant to the standard discussed in *State* v. *Payne*, 303 Conn. 538, 549–50, 34 A.3d 370 (2012), certain evidence in each case was cross admissible in the other cases, and each crime was of substantially similar severity. Specifically, as to cross admissibility, the state asserted that evidence would tend to demonstrate that the gun used by the petitioner in the Greenwich robbery was the same gun that he had used in the Stamford robbery, pieces of which were recovered by the police near the scene of the crime in Stamford. The state also asserted that the multiple informants would testify that the petitioner admitted to all three crimes.

The petitioner objected to the motion for joinder on the grounds that (1) the crimes in the three cases were not of the same severity because only the Norwalk robbery resulted in the death of a store clerk, (2) the cases involved different witnesses, and (3) there was no evidence that the gun used by the shooter in the Norwalk and Greenwich robberies was the same.

After reviewing the parties' briefs and hearing oral argument, the trial court granted the state's motion for joinder. The court found that the petitioner would not be prejudiced by joinder and that some evidence from each case was cross admissible in the other cases. Specifically, the court stated that "[t]hese crimes are all

connected via either physical evidence or inculpatory admissions made by the [petitioner].''

The petitioner, represented by Foster, subsequently appealed his conviction in this case. Foster did not raise a claim on appeal that the trial court improperly granted the state's motion for joinder. Our Supreme Court affirmed the judgments of conviction. *State* v. *Leconte*, supra, 320 Conn. 519.

At his habeas trial, the petitioner did not call Foster as a witness to explain why he chose not to raise the joinder issue on appeal or why he chose to focus on the issues he did in fact raise on direct appeal. The petitioner did call an expert witness, Attorney Frank Riccio, to testify about issues that included joinder, but Riccio did not opine on the reasonableness of the decision by Foster not to challenge the court's ruling regarding joinder.

On the basis of this dearth of evidence, the habeas court concluded that the petitioner had failed to demonstrate deficient performance by Foster or that he had been prejudiced by Foster's decision not to raise the issue of joinder on appeal. Specifically, the habeas court noted the lack of evidence regarding Foster's strategic considerations in choosing to raise issues other than joinder and, thus, concluded that the petitioner had failed to overcome the well established presumption that counsel's decision was a reasonable strategic determination that falls within the bounds of competent performance. Additionally, the habeas court concluded that, because of the cross admissibility of evidence in the three cases, the petitioner failed to demonstrate a reasonable probability that the outcome of the appeal would have been different if Foster had raised the joinder issue on appeal.

The standard of review applicable to the habeas court's determinations regarding whether the petitioner received ineffective assistance from his appellate counsel is identical to the standard of review discussed in part I of this opinion regarding trial counsel, and we need not repeat it here. With respect to ineffective assistance claims brought against appellate counsel, this court recently stated: ''The two-pronged test set forth in *Strickland* equally applies to claims of ineffective assistance of appellate counsel. . . . Although appellate counsel must provide effective assistance, he [or she] is not under an obligation to raise every conceivable issue. A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions. . . . Indeed, [e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . . Most cases present only one, two, or three significant questions. . . . The effect of adding weak argu-

ments will be to dilute the force of stronger ones. . . . Finally, [i]f the issues not raised by his appellate counsel lack merit, [the petitioner] cannot sustain even the first part of this dual burden since the failure to pursue unmeritorious claims cannot be considered conduct falling below the level of reasonably competent representation. . . . To establish that the petitioner was prejudiced by appellate counsel's ineffective assistance, the petitioner must show that, but for the ineffective assistance, there is a reasonable probability that, if the issue were brought before us on direct appeal, the petitioner would have prevailed. . . . To ascertain whether the petitioner can demonstrate such a probability, we must consider the merits of the underlying claim." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 198 Conn. App. 345, 354–55, 233 A.3d 1106, cert. denied, 335 Conn. 948, 238 A.3d 18 (2020).

We next briefly review the law of joinder of criminal charges. "[W]hen charges are set forth in separate informations, presumably because they are not of the same character, and the state has moved in the trial court to join the multiple informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. The state may satisfy this burden by proving, by a preponderance of the evidence, either that the evidence in the cases is cross admissible or that the defendant will not be unfairly prejudiced pursuant to the *Boscarino* factors."[2] (Footnote omitted.) *State* v. *Payne*, supra, 303 Conn. 549–50.

"Importantly, although our Supreme Court rejected the presumption in favor of joinder, the court did not alter the remainder of the substantive law that Connecticut courts apply when determining whether joinder is appropriate. . . . In determining whether joinder is appropriate, it is well established that where the evidence in one case is cross admissible at the trial of another case, the defendant will not be substantially prejudiced by joinder. . . . Our case law is clear that a court considering joinder need not apply the *Boscarino* factors if evidence in the cases is cross admissible." (Citations omitted; internal quotation marks omitted.) *Cancel* v. *Commissioner of Correction*, 189 Conn. App. 667, 680–82, 208 A.3d 1256, cert. denied, 332 Conn. 908, 209 A.3d 644 (2019).

On appeal, the petitioner claims that the habeas court improperly rejected his claim of ineffective assistance of appellate counsel because application of the *Boscarino* factors to the facts and circumstances of this case demonstrates that he was substantially prejudiced by the joinder of his three cases. The petitioner, in his brief on appeal, however, fails to recognize that application of the *Boscarino* factors is unnecessary if evidence from the joined cases is cross admissible or to discuss

substantively why the evidence in the three cases was not cross admissible. Indeed, the petitioner's brief contains no discussion, analysis or application of any of the evidentiary principles that would dictate whether certain evidence in one case would be cross admissible in the other cases. See *Villafane* v. *Commissioner of Correction*, supra, 190 Conn. App. 579 (appellate courts are not required to review issues improperly presented through inadequate briefing). Specifically, the petitioner's brief does not analyze the cross admissibility of the inculpatory statements he made to various informants regarding his participation in all three robberies or the ballistics evidence that tended to show that the gun he used in, and that was recovered from, the Stamford robbery was also used to shoot the victim in the Greenwich robbery. Because the petitioner has failed to brief this issue, it is unnecessary to consider the arguments he makes regarding application of the *Boscarino* factors. Accordingly, we decline to review his claim that the habeas court improperly concluded that he failed to demonstrate ineffective assistance of appellate counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court granted the petitioner certification to appeal.

[2] "In *State* v. *Boscarino*, [204 Conn. 714, 722–24, 529 A.2d 1260 (1987)], our Supreme Court first articulated the factors that a trial court must consider when deciding whether it is appropriate to join . . . separate yet factually related cases for trial *when evidence in the cases is not cross admissible*. The court determined that joinder of such cases is unduly prejudicial to the defendant and, thus, improper, if (1) the cases do not involve discrete, easily distinguishable factual scenarios, (2) the crimes in the cases were of a particularly violent nature or concerned brutal or shocking conduct on the defendant's part, and (3) the trial was lengthy and complex." (Emphasis added.) *Cancel* v. *Commissioner of Correction*, 189 Conn. App. 667, 679 n.5, 208 A.3d 1256, cert. denied, 332 Conn. 908, 209 A.3d 644 (2019).